IN THE MATTER OF THE PROOF OF THE WILL OF SYLVA-
NUS HOWELL, LATE OF THE STATE OF NEW YORK, DE-
CEASED.

An appeal does not lie to the Orphans' Court from an order of the surrogate granting letters testamentary upon a foreign will under the act of April 16th, 1846, *Nix.* 878.

This was an appeal to the Orphans' Court of Sussex county, from an order of the surrogate of that county, granting letters testamentary upon filing an exemplified copy of the will of Sylvanus Howell, and the record thereof, as admitted to probate in the State of New York. The opinion was delivered by the Chief Justice, as presiding judge of that court.

Opinion of WHELPLEY, C. J., presiding judge.

Does an appeal lie to this court from the order of the surrogate complained of? This question of jurisdiction lies at the threshold of the case. The act of April 15th, 1846, (*Nix.* 878,) under which the surrogate acted, gives no appeal to this court. Before the act of March 17th, 1855, (*Nix.* 563, 59,) the appeal was to the Ordinary. *Wallace* v. *Wallace,* 2 *Green's Ch. Rep.* 616.

Unless that act has altered the law, this appeal cannot be sustained. The 11th section is relied upon for this purpose. It provides that all proceedings of surrogates respecting the probate of the will of a person dying after this act takes effect, and not brought before the Orphans' Court by virtue of the 16th section of the act to which this is a supplement, shall be subject to an appeal to the Orphans' Court by any persons interested, or other person legally representing him, and to proceedings thereon, as if the will had not been proved, provided that such appeal be brought within six months after such proceeding before the surrogate, or within one year after such proceedings in cases where the person appealing resides out of this state at the death of the testator.

Manifestly an appeal is not given in *all* cases. By the terms of the act no appeal lies where the testator died before the passage of the act.

What do the phrases, "dying after this act takes effect," "and not brought before the court by virtue of the 16th section of the original act," mean? It is clear that the draftsman of the act had no other cases in view than such as could have been brought before the court for original decree by the interposition of a *caveat*. The clause is evidently elliptical; supplying the ellipsis, it would read, which might have been, and were not brought, &c. Dying resident in this state, is evidently intended by the phrase, dying after this act takes effect.

The legislature was not providing for the regulation of wills of persons who at their death were not subjects of our laws, whose property was not to be disposed of by them, but by a foreign code. If it had been the design to apply the provision to a case of a foreign will brought here for probate after being proved abroad, the time of the testator's death would not have been selected to distinguish one class of wills from another; it would have been the time when the will was brought here to be enforced by our courts.

In the matter of the proof of the will of Sylvanus Howell.

When an act speaks of a person dying after a certain time, correct interpretation requires the words to be applied to those, only, who at their death are the subjects of our laws, unless plain expression is to the contrary.

The mischief to be remedied by the act was, that wills might be proved without the knowledge of persons interested. The mode of remedy was to give a longer time than allowed by the old law, and to make the action of the surrogate no longer final, and as the difficulty chiefly pressed upon non-residents, to give them a longer time than those who resided here at the testator's death, who, from being residents of the same state as the testator, and probably living near him, would have early information of his death. If this section extended to foreign wills, what propriety could there be in giving a non-resident, who lived perhaps the near neighbor of the testator, longer time to appeal than a citizen of this state. He could have disputed the will in the foreign state before it was admitted to probate there.

Again, if this section relates to foreign wills, all appeal is cut off, no matter when the will is brought here, if the testator died before the 4th of July, 1858, although it may have been admitted to probate in the foreign state long since that time. This could not have been intended ; it would cut off appeals in cases when they were most needed. The section manifestly refers to wills of persons dying domiciled in this state, which could not be brought here and filed and recorded under the act of April 15th, 1846. *Wallace* v. *Wallace*, 2 *Green's Ch. Rep.* 616.

How could a record of a foreign will offered before the surrogate for record under the act be subject to *caveat ?* and if so, what power has the Orphans' Court to act in such a case? The powers of the act are given to the surrogate, not to the court. To allow a *caveat* in such a case would be to defeat the act.

To sum up the whole matter, the provisions of the act applied to cases of persons dying domiciled in this state

are sensible and harmonious with the design; if extended to foreign wills, inappropriate and insensible.

Again, if that section extends to the record of foreign wills brought here, it in effect nullifies the act on the subject. The next section declares that the proceedings on the appeal are to be as if the will had not been proved. It manifestly contemplates a case in which the original will is before the court, and can be proved and has been proved in the ordinary way.

How can the Orphans' Court admit to probate without special authority a will where a certified copy only is before it? That is all the appeal brings up—all that was before the surrogate. If the court heard the case, what decree would it give, one admitting or denying probate to the will in the ordinary form, or one that the certified copy should be received and filed?

Appeals are not a mode of instituting a new suit to litigate a matter not before the lower court. An appeal from such an order would bring before the court the decision of the surrogate on the subject matter before him, and also that subject matter. He decided to file the certified copy and recorded it. The surrogate was in the discharge of a special statutory authority; his mode of procedure was carefully marked out; he could not vary from it substantially; he had no authority to prove the will, to swear a single witness as to its execution or the sanity of the testator. His proceeding was upon an order to show cause why a duly certified copy of the will should not be filed and recorded in his office, and letters testamentary issued thereon. This he is authorized to do, if no cause be shown to the contrary. He must act on the certified copy, not on the original. What he is to do is defined exactly, as well as the effect of his action. He can, as has been seen, take no cognizance of the original will, of the sanity of the testator, or of its authenticity, for the plain reason that the act gives no such authority.

It is a mere mode of carrying into effect in this state

the decree of a foreign court. If that decree was in regard to the will of a person there domiciled, and the court had jurisdiction, and is duly authenticated as the act requires, the order to show cause is to be made absolute. The evidence taken since the appeal is not legally before the court, and although it has been taken at great expense, we cannot pass upon it.

If what took place before the surrogate was proof of the will within the meaning of the act, and he acted upon illegal grounds, and the case is appealable, we may reverse his order, and make such proof and order as he ought to have made in regard to the paper purporting to be a record.

In this view of the case we think the certificates before him were legal proof of the necessary facts to be made out.

We think the appeal must be dismissed for want of jurisdiction.